UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK VALLAS,<br>    *Plaintiff*,<br><br>v.<br><br>WALMART, INC.,<br>    *Defendant*. | )<br>)<br>)<br>)<br>)<br>)   3:22-CV-937 (OAW)<br>)<br>)<br>) |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**THIS ACTION** is before the court upon Defendant's Motion for Summary Judgment ("Motion"). ECF No. 27. The court has reviewed the Motion, Plaintiff's response thereto, ECF No. 35, and Defendant's reply in support of the same, ECF No. 36, and is thoroughly apprised in the premises. For the reasons set forth herein, the Motion is **DENIED.**

Few facts are disputed in this action. The parties agree that on July 7, 2020 (during the COVID-19 pandemic), Plaintiff slipped on a disinfecting wipe at a Walmart store in Branford, Connecticut. *See* ECF No. 35 at 13.[1] After he slipped, an employee allegedly told Plaintiff that wipes were often found on the floor in that area. *Id.* at 15. Plaintiff asserts he sustained injuries as a result of his fall, and he brought this premises liability suit against Defendant to recover for them. Defendant moves for summary judgment.

Summary judgment appropriately may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must prove that no genuine factual disputes exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In

---

[1] Because Plaintiff's opposition documents are filed as one continuous submission and has no consistent internal pagination, the court cites to the pagination supplied by the electronic filing system.

1

determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* "'[I]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,' summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002)) (alteration in original).

But a party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury properly could return a verdict for the party producing it, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010) ("[The] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alterations in original).

Under Connecticut law, a business owner owes its invitees a duty to keep its premises in a reasonably safe condition. *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002). To carry a claim that a business owner has breached that duty, a plaintiff must show "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should,

in the exercise of reasonable care, have discovered it in time to remedy it." *Bisson v. Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 628, 195 A.3d 707, 714 (2018) (alteration in original).

The Motion raises one argument: that Plaintiff has failed to allege facts sufficient to support the notice element.  More specifically, Defendant asserts that there are no facts to show that any Walmart employee had either actual or constructive notice of the disinfecting wipe lying in the aisle.  Plaintiff disagrees, arguing not only that a reasonable jury could view certain video footage of the incident and conclude that Defendant had actual notice of the wipe on the floor, but also that there is sufficient evidence from which a reasonable jury could conclude that Defendant had constructive notice.

### Actual Notice

The court first turns to whether there is sufficient evidence to support a finding of actual notice.  Footage of the fall is at about the 7:36:00 mark in the video.  Plaintiff, wearing a red t-shirt and dark shorts, is at the top left of the screen, near a "002" marking (between two pillars in the foreground which extend to a row of self-checkout registers). The fall itself is partially obscured by a blue, waist-high employee stand of sorts.[2]  Plaintiff contends the "video reflects the wipe [in question] being dropped from a shopper's cart onto the floor at the location of the defendant's fall" some six minutes earlier, at 7:30:06. The court disagrees.

---

[2] As a point of reference, the court notes that at the 7:38:53 mark, an apparent employee in a yellow vest reaches down toward the blue employee stand and then places an orange cone or marker (7:39:00) to indicate where the fall took place.

3

As a preliminary matter, Plaintiff claims Walmart provided the wipes but "failed to provide trash receptacles [sic] for [them] to be discarded." ECF No. 1 ¶ 4(f).[3] However, video casts doubt on this assertion, even around the time of the fall. At about 7:32:02, someone in light-colored clothing enters from the right, grabs a shopping cart, gets wipes, and appears to discard them in what could be determined by a reasonable jury to be a waste bin (after wiping down their cart). Then, around 7:32:58, an apparent employee in what appears to be a Walmart vest seems to wipe their hands and discard the wipes beneath the dispenser (where a reasonable jury could find there likely was a waste bin). At 7:35:18, a customer appears to enter, use a wipe on a cart, and discard it in the likely waste bin. Still, the existence of a trash bin is not dispositive of whether a wipe was on the floor where Plaintiff tripped, nor of whether Defendant was on notice of its presence.

In terms of actual notice, however, the court cannot find as Plaintiff suggests that the video "reflects the wipe being dropped" at 7:30:06. The person Plaintiff asserts dropped the wipe can be seen entering around 7:29:02 with a big blue tote or reusable bag on their left shoulder. They retrieve wipes (7:29:09) and wipe the rim of the cart. At 7:30:06, they walk past two customers who are advancing in the line for the self-checkout registers. Those two customers are behind someone in a Yankees t-shirt (who is standing beside another customer). At 7:30:00, one of the two customers appears to transfer a white milk jug or other light-colored item with a handle from their left hand to their right. As they advance in the line and pass by the person Plaintiff believes dropped the wipe, the person with the milk jug (or similar item) appears to swing forward their left hand. Their left hand seems to have a white or light-colored item in it, and they appear to have

---

[3] The Removal Notice has a caption dated 2021, but it is clear removal occurred in 2022.

4

a wristlet or similar item dangling from their left wrist.  The court agrees with Defendant, ECF No. 36 at 3, that the item in that person's left hand appears to be what Plaintiff mistakes as the dropping wipe depicted in the screenshot with the red circle, ECF No. 35, at 21.  Instead, this is the item in the left hand of the customer in line, rather than a wipe falling from the cart of the customer passing them from the right to the left of the screen.

What Defendant calls "rank speculation," ECF No. 36 at 2, the court finds to be an assertion from Plaintiff which a reasonable jury could determine to be entirely incorrect.  However, there is disagreement as to this material fact, which reduces the significance (at summary judgment) of the many times Plaintiff asserts Walmart employees looked in the area of the fallen wipe.  The reality is that no wipe can be seen in the video, and it is unclear when it landed there, so looking in the area where the wipe *later* falls cannot be proof of actual notice.  Even presuming as true all facts properly asserted by Plaintiff, the court must find that no fair viewing of the video depicts the wipe falling from a cart when Plaintiff claims this to be so.  As such, no reasonable claim of actual notice is raised, and on the record before it, the court cannot decide this question of fact as a matter of law.

**<u>Constructive Notice</u>**

Despite the lack of actual notice, Plaintiff has adduced sufficient evidence to show constructive notice, through circumstantial evidence or the "mode of operation rule."[4]

During Plaintiff's discussion of constructive notice, ECF No. 35 at 4, he attempts to equate "a discarded sanitizing wipe" (on which he claims to have slipped) to dirty lettuce

---

[4] Plaintiff also refers to the "affirmative act" rule, but that is a separate means of establishing notice.  The court need not address that theory where there are independent bases upon which to deny the Motion.

stuck to a market's floor in *Morris v. King Cole Stores, Inc.*, 132 Conn. 489, 491–92 (1946),[5] and a dirty, grimy, flattened out piece of candy with numerous heel marks in it, on a store's floor in *Hudson v. F.W. Woolworth Co.*, 275 Mass. 469, 470 (1931), the conditions of which suggested that the lettuce and candy had been there long enough to support a finding of constructive notice.  However, a sanitizing wipe is ***obviously*** different.  Lettuce and candy intended for consumption are not expected to be dirty, and so their condition in *Morris* and *Hudson* had great significance in those cases, whereas a sanitizing wipe can become dirty ***immediately*** upon use, offering little to no significance as to how long before then it had been discarded, particularly when merely "a little dirty," as Plaintiff described the wipe in this case.  *See* ECF No. 27-3 at 6:24.

Further, while the parties agree Plaintiff slipped on a wipe, they disagree as to how long it had been there, and despite Plaintiff's claims to the contrary, the provided video does not clearly show the wipe, nor how long it might have been on the floor before Plaintiff slipped on it.  Nonetheless, Plaintiff has provided testimony that it looked like the wipe had been on the floor for a while.  And whether his observations are credible is for a jury to decide.  As such, this circumstantial evidence must survive summary judgment.

Additionally, the mode of operation rule "evolved in response to the proliferation of self-service retail establishments," and allows a plaintiff to show that "the owner of a self-service retail establishment reasonably may be deemed to have constructive notice of dangerous, transitory conditions that are likely to occur due to the manner in which the store is operated."  *Kelly v. Stop & Shop, Inc.*, 281 Conn. 768, 778 and 780 (2007).  Connecticut's Appellate Court has outlined a three-factor test to determine whether the

---

[5] That case also involved crushed strawberries on which its plaintiff could have slipped.

rule applies: "(1) the defendant must have a particular mode of operation distinct from the ordinary operation of a related business; (2) that mode of operation must create a regularly occurring or inherently foreseeable hazard; and (3) the injury must happen within a limited zone of risk." *Porto v. Petco Animal Supplies Stores, Inc.,* 167 Conn. App. 573, 581, 145 A.3d 283, 289 (2016).  To avail himself of the rule, Plaintiff must show the Defendant's mode of operating its business "gives rise to a foreseeable risk of injury to customers and that [his] injury was proximately caused by an accident within the zone of risk."  *Kelly*, 281 Conn. at 791.

Plaintiff contends that the mode of operation rule is applicable here, where by providing wipes as part of Defendant's regular business operations it created the foreseeable risk that the wipes would end up on the floor around the dispenser, and where Plaintiff did in fact injure himself by slipping on a wipe not far from the dispenser. Defendant argues that the mode of operation rule is wholly inapplicable because there is no evidence presented that the provision of disinfecting wipes was anything but the ordinary operation of a retail business during a pandemic.

The court finds Plaintiff's argument more persuasive on this point.  Even if the court were to accept that all retail establishments adjusted their operations to include means of mitigating the transmission of COVID-19, Defendant offered the specific feature of a dispenser for sanitary wipes placed near a corral of shopping carts, thus inviting customers to use the wipes for the specific purpose of disinfecting the carts before use. Whether performed as an act of kindness by providing valued wipes (free of charge) during a pandemic, or as a self-serving means to attract comfortable, in-person shoppers,

7

the court finds this practice to have been distinct from ordinary retail business, at least insofar as to survive summary judgment.

A review of relevant case law supports the court's conclusion that this is the sort of fact pattern to which the rule applies. *Kelly* involved a grocery store that sold salad from a self-serve salad bar, from which a piece of lettuce dropped to the floor, causing a customer to slip. 281 Conn. 768. The Supreme Court of Connecticut applied the mode of operation rule, noting that the store's manager testified that customers regularly dropped salad bar items on the floor, creating a "precarious" environment around it. *Id.* at 793. Connecticut's Supreme Court also has illustrated the rule's applicability by favorably referencing[6] a case out of the State of Washington, *White v. Safeway, Inc.*, Court of Appeals of Washington, Docket No. 35960–0–II, 2008 WL 501472, *2, 2008 Wash.App. LEXIS 456, *4 (February 26, 2008). In *White*, the mode of operation rule was applied to a store that sold self-serve roast chicken from a cart, around which grease spilled and caused someone to slip, but its court held that "a plaintiff who slips and falls in a grocery store cannot survive summary judgment by merely raising the inference that the substance causing her fall came from within the store; rather, the plaintiff must show that such spills were *foreseeable in the specific area where she fell*." *Id.* at 2008 WL 501472 *2 (emphasis in original).

The instant case bears close resemblance to *Kelly* and *White*. In those cases, as here, the defendant business implemented a specific self-service feature that, while not entirely unique, was not so essentially a part of self-service retail as to be considered an ordinary way of conducting business. The foreseeable risks of these features resulted in

---

[6] *See Fisher v. Big Y Foods*, 298 Conn. 414, 437 (2010).

foreseeable injuries in the area where accidents foreseeably could occur. Moreover, as in *Kelly*, here it appears from the employee's comments to Plaintiff after his fall that discarded wipes were a known hazard in that area of the store. Thus, the court finds Plaintiff has satisfied the elements of the mode of operation rule.

Whether by circumstantial evidence, application of the mode of operation rule, or both, the court finds that Defendant was on constructive notice of the danger from the wipe, and that this case therefore must survive summary judgment.

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, ECF No. [27], hereby is **DENIED.**
2. Given the fact pattern and arguments presented in the parties' briefs, the court finds it appropriate to refer this action to a United States Magistrate Judge for a settlement conference. The Clerk of Court respectfully is asked to please assign a Magistrate Judge for that purpose.

**IT IS SO ORDERED** at Hartford, Connecticut, this 24th day of September, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE